IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00738-CBS-KLM (*consolidated with* 08-cv-01436-CBS)

MAEGHAN DODGE,
    Plaintiff,
v.

JOAN SHOEMAKER, Warden of Denver Women's Correctional Facility,
in her individual and official capacities;
WILLIAM BOKROS, Deputy Warden at the Denver Women's Correctional Facility,
in his individual and official capacities;
ROBERT THIEDE, Jr., an investigator for the Department of Corrections,
in his individual and official capacities;
DEBRA AHLIN, a case manager for the Department of Corrections,
in her individual and official capacities; and
MARK ALTHOLZ, an employee of the Denver Reception and Diagnostic Center,
in his individual and official capacities,
    Defendants.

---

## ORDER REGARDING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT

---

Magistrate Judge Craig B. Shaffer

    THIS MATTER comes before the court on Defendants' Motion to Dismiss Plaintiff's Second Amended Verified Complaint (doc. # 98), filed on March 31, 2009. Plaintiff Dodge filed her Response to Motion to Dismiss (doc. # 102) on April 27, 2009, and Defendants filed their Reply in Support of Defendants' Motion to Dismiss (doc. # 107) on May 15, 2009. The court heard oral argument on the pending motion during a hearing on December 15, 2009. I have carefully considered the pending motion and related briefs, the arguments of counsel, the entire court file and the applicable case law.

1

## FACTUAL BACKGROUND

Ms. Dodge initiated this action on April 4, 2008 with the filing of her Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 and a Prisoner Complaint, together with attached exhibits.[1] Plaintiff's original *pro se* Complaint asserted due process, equal protection, and Eighth Amendment violations against Colorado Department of Corrections ("CDOC") employees Debra Ahlin, William Bokros and Joan Shoemaker. The claims alleged arose from actions that took place while Ms. Dodge was a prisoner at the Denver Women's Correctional Facility ("DWCF"). Plaintiff filed a *pro se* Amended Complaint (doc. # 10), along with attached exhibits on May 27, 2008, naming the same defendants and reasserting the same basic claims for relief. Counsel entered an appearance on behalf of Ms. Dodge on June 30, 2008.

On July 10, 2008, through counsel Ms. Dodge filed a Complaint in Case No. 08-cv-01436-RMP that asserted claims against nine specifically identified defendants, including Joan Shoemaker, Debra Ahlin, William Bokros, Robert Thiede, Jr., Mark Altholz, and James Fringer. This Complaint generally alleged that (1) "Defendants" had violated Plaintiff's Eighth Amendment rights by failing to protect Ms. Dodge from being sexually assaulted by Defendant

---

[1]Ms. Dodge has an extended history of bringing lawsuits arising from her confinement at the Denver Women's Correctional Facility. On May 21, 2007, Ms. Dodge filed Civil Action No. 07-cv-00316 in which she asserted claims against Joseph Ortiz, Joseph Morales, Debra Ahlin, Lieutenant Fringer, Sergeant Jones, Robert Thiede, Jr., Marvin Small. Mark Altholz, William Bokros, Joan Shoemaker, and Governor Owens for violations of the First, Sixth, Eighth and Fourteenth Amendments. That *pro se* action was dismissed without prejudice on June 1, 2007 based upon Ms. Dodge's failure to comply with the pleading requirements of Fed. R. Civ. P. 8. Plaintiff filed another lawsuit, Civil Action No. 07-cv-02039, on October 1, 2007. In that case, Ms. Dodge named as defendants Joan Shoemaker, Debra Ahlin, Mark Altholz, Joseph Morales, Robert Thiede, Jr., William Bokros, Richard Hatch, Captain Casias, Marvin Small, and Jimmy Fringer. Once again, Ms. Dodge's *pro se* complaint alleged violations of the First, Fifth, Sixth and Fourteenth Amendments. This lawsuit was dismissed without prejudice after Ms. Dodge failed to file an amended complaint within the time allowed by the district court.

Fringer; (2) that "Defendants" had engaged in a conspiracy to "impose further punishment upon plaintiff" to make her "stop claiming that she had been sexually assaulted;" (3) that "Defendants" impaired Plaintiff's First Amendment rights by charging her with criminal conduct in order "to prevent plaintiff from reporting that she was sexually assaulted;" and (4) that "Defendants engaged in a multitude of orchestrated efforts to impose punishment and retribution upon plaintiff without affording due process."

Meanwhile, in Case No. 08-cv-00738, Defendants Ahlin and Shoemaker moved on August 11, 2008 to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and contemporaneously moved to stay discovery pending a decision on their motion to dismiss. Magistrate Judge Mix granted Defendants' Motion to Stay in an Order dated September 8, 2008 (doc. # 37), after concluding that "Defendants should not be subjected to suit until the [qualified] immunity issues are resolved." On September 17, 2008 with the consent of the parties, the O8-cv-00736 case was referred to this Magistrate Judge to handle all dispositive matters including trial and entry of a final judgment in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and D.C.COLO.LCivR 72.2.[2]

On December 11, 2008, Plaintiff filed on her own behalf a Motion for Leave to Amend Pursuant to Rule 15(c) and 19(a) (doc. # 62), and a proposed Amended Prisoner Complaint. The proposed pleading named as defendants Joseph Ortiz, Joan Shoemaker, Debra Ahlin and William Bokros, and alleged violations of the First Amendment and the Due Process Clause.

---

[2]I issued an Order of Consolidation (doc. # 69) on December 24, 2009 granting the parties' Joint Motion to Consolidate Cases (doc. # 48). The consolidated actions were referred to this court for all purposes, including trial and entry of a final judgment and thereafter captioned Civil Action No. 08-cv-000738-CBS-KLM (*consolidated with* Civil Action No. 08-cv-01436-RPM)

Plaintiff's counsel filed his own First Motion to Amend Complaint (doc. # 64) on December 12, 2008. That proposed pleading named Debra Ahlin, William Bokros and Joan Shoemaker as defendants and asserted claims for conspiracy under 42 U.S.C. § 1985, cruel and unusual punishment, and unlawful interference with Plaintiff's right to petition the government. At a hearing on January 8, 2009, I denied Ms. Dodge's own motion to amend, finding that the submission was improper given that she was represented by counsel at the time of filing. *Cf. Lee v. Imperial Lending, LLC*, 2007 WL 3090800 (D. Colo. 2007) ("Parties represented by counsel may not file papers pro se"); *Durham v. Lappin*, 2006 WL 2724091 (D. Colo. 2006) ("the Court will not entertain *pro se* motions by a party who is represented by counsel"). During the same hearing, I allowed Plaintiff's counsel to withdraw his submission with leave to refile.

On February 3, 2009, Ms. Dodge through her new counsel filed a Motion to Perfect Pleadings and File Amended Complaint (doc. # 81). Plaintiff's counsel stated that "in order to proceed with a consolidated case," Ms. Dodge wished to "perfect the pleadings and to consolidate the pleadings into one complaint with all the causes of action together to simplify the administration of these cases." Counsel suggested that "[m]erging the two cases and providing one complaint with consolidated causes of action will provide a clear picture of the nature of the case and the alleged violations." Plaintiff's counsel attached to this motion a proposed Second Amended Verified Complaint that included ten named defendants, as well multiple Joan and John Does. On February 4, 2009, I granted leave for Ms. Dodge's first lawyer to withdraw for this case, recognized the appearance of Plaintiff's new counsel and allowed Plaintiff to file yet another motion for leave to amend her Complaint.

Plaintiff's counsel filed a new Motion to Perfect Pleadings and File Second Amended

Complaint (doc. # 87) on February 13, 2009.  The court accepted Plaintiff's Second Amended

Verified Complaint (doc. # 93)  for filing on March 17, 2009.  The Second Amended Verified

Complaint asserts four claims for relief and names as defendants Warden Shoemaker, Deputy

Warden Bokros, Case Manager Ahlin, Investigator Thiede and Department of Corrections

employee Altholz.[3]

In her "Factual Allegations," Ms. Dodges avers that she was raped by Lieutenant Fringer

on April 10, 2005, while incarcerated in the Denver Women's Correctional Facility.  *See* Second

Amended Verified Complaint, at ¶ 13.  Plaintiff claims that she sent separate letters to Warden

Shoemaker and Investigator Thiede on April 10, 2005, stating that she had been raped and

requesting assistance.  *Id.* at ¶¶ 14 and 15.  On April 15, 2005, Ms. Dodge filed a grievance

claiming that she had been raped, and on April 21, 2005, she was interviewed by Defendant

Altholz.  *Id.* at ¶¶ 19 and 20.  According to Plaintiff, Defendant Altholz told her that she needed

to withdraw her grievance against Lieutenant Fringer and warned that she would be placed in

administrative segregation if she persisted with the grievance.  *Id.* at ¶ 21.  On May 5, 2005,

Plaintiff was placed in administrative segregation, where she remained until May 6, 2006.  *Id.* at

¶¶ 23, 43 and 49.  The Second Amended Verified Complaint alleges that on October 13, 2005,

Defendant Thiede warned Ms. Dodge that

> we'll prosecute you to the max.  I was a sheriff.  I have friends.  I will handpick
> the DA and the judge.  You won't take down my Lieutenant.

*Id.* at ¶ 39.

---

[3]Plaintiff's Second Amended Verified Complaint effectively dismissed Joe Ortez, James
Fringer, Richard Hatch and Daniel DuPriest and the unspecified Doe defendants from this
consolidated action.

Plaintiff alleges that from her initial placement in administrative segregation on May 5, 2005 through May 2006, Defendant Ahlin signed off on monthly review forms continuing Ms. Dodge's retention in administrative segregation. *Id.* ¶ 43. She further alleges that from June 10, 2005 through December 14, 2005, Defendant Bokros repeatedly signed administrative segregation review forms approving the decisions of Ms. Ahlin and her fellow classification committee members. *Id.* at ¶ 45.

On March 16, 2006, Ms. Dodge was named as a defendant in criminal case 06CR1728 filed in Denver County Court (hereinafter "the state criminal case"), charging her with "unlawfully and feloniously attempt[ing] to influence Deputy Warden William Bokros [and Case Manager Supervisor Debra Ahlin] . . . by means of deceit or threat of violence or economic reprisal." *Id.* at ¶¶ 51-52. According to the Second Amended Verified Complaint,

> On or about May 3, 2006, Ms. Dodge was arraigned in Denver District Court on case 06CR1728. At that time, Ms. Dodge was presented with the formal charges and became aware that William Bokros and Debra Ahlin, two individuals who had signed off on the Administrative Segregation retention monthly review forms were listed as victims of Ms. Dodge during the period they were reviewing Ms. Dodge's placement in Administrative Segregation.

*Id.* at ¶ 54. Ms. Dodge claims that she "filed a step 1, step 2 and step 3 grievance asserting that victims of an alleged crime by an inmate should not have reviewing authority over the inmate's placement in Administrative Segregation. *Id.* at ¶ 55. The Second Amended Verified Complaint contains four claims for relief alleging violations of the Eighth Amendment, the Due Process Clause, and First Amendment, as well as a conspiracy.

Defendants have moved to dismiss Plaintiff's Second Amended Verified Complaint

pursuant to Fed. R. Civ. P. 12(b)(6).  More specifically, Defendants contend that the statute of limitations bars any of Ms. Dodge's claims that accrued prior to April 11, 2006.  The Motion to Dismiss also argues that Plaintiff has failed to state a claim for relief to the extent the Second Amended Verified Complaint seeks to hold Defendants liable in their official capacities, and requests compensatory damages in the absence of a claim of physical injury.  Defendants further maintain Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and the doctrine of qualified immunity.

## ANALYSIS

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  *See* Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 2010 WL 437335, *3 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitations of the elements of a cause of action will not do."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."[4]  *Id.*  As the Tenth Circuit explained in *Ridge*

---

[4]Documents attached to the complaint as exhibits are part of the complaint and may be considered by the court when evaluating a Rule 12(b)(6) motion to dismiss.  *Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991).

*at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10ᵗʰ Cir. 2007),

> the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

"The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10ᵗʰ Cir. 2008) (quoting *Bell Atlantic Corp.*, 555 U.S. at 556). A complaint must set forth sufficient facts to elevate a claim above the level of mere speculation. *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10ᵗʰ Cir. 2007).

It must also be noted that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009). Faced with a challenge under Rule 12(b)(6), a plaintiff finds no refuge by arguing "that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side." *Id.* at 1953 (quoting *Bell Atlantic Corp.*, 550 U.S. at 559).

1.     *Claims Against Defendants in their Official Capacity*

To the extent that Ms. Dodge is suing Defendants in their official capacities, she is in

reality attempting to impose liability on their employer, the Colorado Department of Corrections. *See Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988). A suit against a state official in his or her official capacity is treated as a suit against the state. *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991). Absent a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). Eleventh Amendment immunity extends to the states themselves and to those governmental entities that are "arms of the state." *Ambus*, 995 F.2d at 994. States, state officials sued in their official capacities, and governmental entities that are considered "arms of the state" are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). Such entities cannot be sued for monetary damages arising from alleged conducted which deprives a plaintiff of his or her civil liberties. The Department of Corrections is an arm of the state and thus is entitled to Eleventh Amendment immunity. If the Eleventh Amendment applies, it confers total immunity from suit, not merely a defense to liability. *Ambus*, 995 F.2d at 994 (citation omitted). All claims against the Defendants in their official capacities must be dismissed.

2.      *Physical Injury*

It is well-established that in an action brought pursuant to 42 U.S.C. § 1983, a  plaintiff must provide not only a constitutional violation, but also demonstrate that the constitutional deprivation caused him some actual injury. *Miner v. City of Glen Falls*, 999 F.2d 655, 660 (2d Cir. 1993). The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, has heightened this

requirement by barring a prisoner from bringing a civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See* 42 U.S.C. § 1997e(a) and (e).[5]

Ms. Dodge alleges that on or about April 10, 2005 she was raped by Lieutenant Fringer while confined in the DWCF. *See* Second Amended Verified Complaint, at ¶ 13. The Second Amended Verified Complaint also avers that knowing and willful misconduct on the part of Defendants Shoemaker and Bokros "result[ed] in substantial harm to Ms. Dodge," *id.* at ¶¶ 77 and 99, and was "the legal and proximate cause of Ms. Dodge's injuries." *Id.* at ¶ 79. Defendants' Motion to Dismiss argues that the Second Amended Verified Complaint does not contain any claim specifically directed to the alleged sexual assault by Lieutenant Fringer, but rather asserts claims based on Plaintiff's subsequent placement in administrative segregation. Ms. Dodge responds, without citing any supporting authority, that her claim for compensatory damages cannot be dismissed because of her earlier physical injury at the hands of non-defendant Fringer. Plaintiff's Response further argues that "it is a question of fact as to the exact nature and extent of Ms. Dodge's injuries." *See* Response, at 15. Yet a careful reading of the

---

[5]While the PRLA requires "physical injury," the threshold may not be particularly high. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (suggesting that the PRLA requirement should be construed consistent with the "well-established Eighth Amendment standard," and must be more than *de minimis,* but need not be significant). *But see Cain v. Commonwealth of Virginia*, 982 F. Supp. 1132, 1135, n. 3 (E.D. Va. 1997) (headaches causing vision loss and requiring pain medication as well as numbness, joint pain and stomach cramps did not constitute physical injury within scope of § 1997e(e)); *Zehner v. Trigg*, 952 F. Supp. 1318, 1322-23 (S.D. Ind. 1997) (dismissing Eighth Amendment claim based upon prisoners' exposure to asbestos where no physical injury could be shown).

Second Amended Verified Complaint finds no allegation or use of the phrase "physical injuries."

"[A]lthough claims for mental and emotional distress can be brought pursuant to § 1983, . . . § 1997e(e) provides that 'such a suit cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'" *Turner v. Schultz*, 130 F. Supp.2d 1216, 1222-23 (D. Colo. 2001) (quoting *Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999)). *See also Flanery v. Wagner*, 182 F.3d 931, *2 (10th Cir. 1999) (Table) (holding that the trial court properly granted summary judgment as to plaintiff's claim for compensatory damages where plaintiff failed to show that he suffered physical injuries as a result of defendant's alleged conduct). For example, where inmates have alleged that defendants were deliberately indifferent to their safety or welfare, or inflicted emotional injury by depriving them of basic necessities of life, courts have applied section 1997e(e) to restrict the availability of judicial remedies if there is no showing of physical injury. *See, e.g., Mason v. Schriro*, 45 F. Supp.2d 709, 716 (W.D. Mo. 1999) ("a review of cases from other courts indicates that [§ 1997e(e)] is most frequently applied where plaintiff alleges that defendants' actions have caused him to fear physical injury and fear for his safety and welfare, but he fails to show any physical injury"). Moreover, "a number of courts have held that a prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries." *Hughes v. Colorado Department of Corrections*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009).

Quite simply, the Second Amended Verified Complaint contains no factual allegations that would demonstrate or even infer that Ms. Dodge suffered physical injury caused by conduct

attributable to the named Defendants.[6]  This omission is fatal to Plaintiff's claim for

compensatory damages.  Nevertheless, Ms. Dodge would not be precluded from recovering

nominal or punitive damages should she prevail on the merits.  *See, e.g.,. Wares v. VanBebber*,

319 F. Supp. 2d 1237, 1253 (D. Kan. 2004).


3.      *Qualified Immunity*

        Defendants have raised the defense of qualified immunity as to any claims asserted

against them.  Under the doctrine of qualified immunity, government officials are immune from

civil damages liability for constitutional torts as long as their actions could reasonably have been

thought consistent with the rights they are alleged to have violated.  *Anderson v. Creighton*, 483

U.S. 635, 638 (1987).  Qualified immunity protects defendants not only from liability, but also

from suit.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Such immunity is qualified in that

it does not obtain when otherwise immune officials violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  *Armijo v. Wagon Mound

Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998) (quoting *Clanton v. Cooper*, 129 F.3d

1147, 1153 (10th Cir. 1997)).  Whether Defendants are entitled to qualified immunity is a legal

question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229

(2008).

        This court must review Defendants' claim of qualified immunity "under the customary

_____

        [6]Defense counsel conceded as much during the motions hearing on December 15, 2009.
*See* Transcript of Hearing (doc. # 117), at 25 and 26.

motion to dismiss standard." *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001). "[A]

complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Id.* However, the court is also mindful of the United States Supreme Court's admonition that a

ruling on the issue of qualified immunity should be made at the earliest possible stage of the

proceeding in order to preserve the protections of the privilege. *See Saucier v. Katz*, 533 U.S.

194 (2001), *overruled on other grounds*, 129 S.Ct. 808 (2009).

> Resolution of a dispositive motion based on qualified immunity involves a
> two-pronged inquiry. First, a court must decide whether the facts that a plaintiff
> has alleged or shown make out a violation of a constitutional right. Second, . . .
> the court must decide whether the right at issue was clearly established at the time
> of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks

and citations omitted). In determining whether a right is clearly established, the relevant inquiry

is "whether it would be clear to a [reasonable government official] that his conduct was unlawful

in the situation he confronted." *Saucier*, 533 U.S. at 202. "A reviewing court may exercise [its]

sound discretion in deciding which of the two prongs of the qualified immunity analysis should

be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified

immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.* The

plaintiff bears the burden of showing with particularity facts and law establishing the inference

that the defendant violated a clearly established federal constitutional or statutory right. *Walter*

*v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994).

The defense of qualified immunity also implicates the pleading requirements of Fed. R.

Civ. P. 8(a). *Robbins v. Oklahoma,* 519 F.3d 1242, 1248 (10th Cir. 2008). Qualified immunity

insures that public officials are not subjected to "'broad-ranging discovery' that can be peculiarly

disruptive of effective government." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987).

> Although we apply "the same standard in evaluating dismissal in qualified
> immunity cases as to dismissals generally," complaints in § 1983 cases against
> individual government actors pose a greater likelihood of failures in notice and
> plausibility because they typically involve complex claims against multiple
> defendants. . . . Without allegations sufficient to make clear the "grounds" on
> which the plaintiff is entitled to relief, it would be impossible for the court to
> perform its function of determining, at an early stage in the litigation, whether the
> asserted claim is sufficient clear.

*Robbins,* 519 F.3d at 1249. The court will proceed to apply these standards to the claims

asserted in the Second Amended Verified Complaint.

A.     Third Claim for Relief

While Plaintiff's Third Claim is not a model of clarity, it is clear what this Claim does

not encompass. The Third Claim does not specifically challenge the initial decision to place Ms.

Dodge in administrative segregation, or allege that Defendants Ahlin and Bokros played any role

in Plaintiff's initial placement in administrative segregation. *See* Second Amended Verified

Complaint, at ¶¶ 23 and 26. Rather, the Third Claim alleges that Defendants Ahlin and Bokros

violated Plaintiff's due process rights by continuing her placement in administrative

segregation,[7] as a result of which "she was deprived of good time credits and privileges and

---

[7]The reasons for Ms. Dodge's placement in segregation are not completely clear. The
Second Amended Verified Complaint refers to "administrative segregation." Department
Administrative Regulation 600-02 states that the "[u]se of administrative segregation is a
preventive and management assignment process and is to be distinguished from punitive and
disciplinary segregation." Exhibits attached to Ms. Dodge's Amended Complaint (doc. # 10)

freedoms afforded other similarly situated prisoners who were not placed in Administrative

Segregation." *Id.* at ¶ 115. Elsewhere, the Second Amended Verified Complaint claims that

inmates in administrative segregation have limited access to visitation and "do not have adequate

access to law books, information about how to obtain a lawyer or other ways in which to

discover how to redress legal wrongs committed against them." *Id.* at ¶ 42.

It also appears that the Third Claim asserts a First Amendment retaliation claim against

Ahlin and Bokros. According to Ms. Dodge,

> she remained in administrative segregation for 366 days because Debra Ahlin and
> William Bokros who were alleged victims of Ms. Dodge refused to allow her to
> be returned to the regular prison population in retaliation against Ms. Dodge for
> her alleged attempt to influence them in Denver Criminal Case No. 06CV1728.

*Id.* at ¶ 114. Elsewhere, the Third Claim contends that Ahlin and Bokros "were in a position to

abuse their position of authority over Ms. Dodge as alleged victims." *Id.* at ¶ 117. In view of the

foregoing, the court must determine whether the Second Amended Verified Complaint asserts a

proper claim under either the Due Process Clause or the First Amendment.

The Supreme Court has held that "prison conditions that 'impose [] atypical and

significant hardship on the inmate in relation to the ordinary incidents of prison life' may create

a liberty interest protected by the Due Process Clause." *Fogle v. Pierson*, 435 F.3d 1252, 1259

(10th Cir. 2006) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). As a general proposition,

_____

indicate that Plaintiff was placed in administrative segregation because of "conduct [that] poses
serious threat to security of a facility." However, during the hearing on December 15, 2009,
Plaintiff's counsel argued that her client had been "placed in administrative segregation for
punitive reasons." *See* Transcript of Hearing (doc. # 117), at 18.

prisoners do not have a constitutionally recognized liberty interest in their security classification or placement. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"), *receded form on other grounds by* 515 U.S. 472 (1995); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (Colorado laws and regulations do not entitle inmates to remain in the general population absent certain conduct).

In *Sandin*, the Supreme Court held that an inmate's liberty interest is protected under the Due Process Clause if the restraints or conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. *See also Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) ("the Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'") (quoting *Sandin*, 515 U.S. at 484). Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination . . . ." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

The Tenth Circuit has identified the following non-dispositive factors that may be relevant to determining whether placement in administrative segregation implicates a protected liberty interest: (1) whether "the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) [whether] the conditions of placement are extreme;

(3) [whether] the placement increases the duration of confinement . . . ; and (4) [whether] the placement is indeterminate." *DiMarco v. Wyoming Department of Corrections*, 473 F.3d 1334, 1342 (10th Cr. 2007) (also acknowledging that "any assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts").

The first factor, "whether the segregation relates to and furthers a legitimate penological interest," arguably supports Plaintiff's due process claim. The Second Amended Verified Complaint alleges that Plaintiff was placed in administrative segregation because she refused to withdraw her grievance against Lieutenant Fringer, *see* Second Amended Verified Complaint, at ¶¶ 21-23, and thereafter remained in segregation because her placement was subject to periodic review by alleged "victims" Bokros and Ahlin. At this point in the proceedings, the court must accept these factual allegations.

The other factors identified by the Tenth Circuit may weigh more favorably for Defendants. Ms. Dodge has not alleged that her placement in administrative segregation increased the duration of her confinement. It is also not clear that the Second Amended Verified Complaint describes conditions that were atypical or extreme. The Tenth Circuit has held that "the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). *Cf. Fiorentino v. Biershbach*, 64 Fed. Appx. 550, 552 (7th Cir. 2003) (segregated confinement "to a cell nearly 24 hours a day" and deprivation "of various rights and privileges enjoyed by the general prison population such as

smoking, watching TV, listening to the radio, using the telephone, accessing the law library, and participating in recreational and religious programs . . . did not constitute an atypical, significant deprivation that would create a liberty interest protected by due process").

The Second Amended Verified Complaint specifically alleges that Ms. Dodge was deprived of good time credits. The Tenth Circuit has previously noted in "an unpublished but persuasive opinion," that

> A Colorado inmate has no constitutional right to good time credit, even though "the accumulation of good time credits serves . . . the purpose of determining an inmate's parole eligibility date. Good time credits do not count toward sentence reduction. Thus, [a prisoner's] loss of good time credits [does] not "inevitably" increase[ ] the duration of his sentence, and accordingly does not give rise to a right to due process.

*Lusero v. Welt*, 223 Fed. Appx. 780, 784-85 (10th Cir. 2007) (quoting *Klein v. Coblentz*, 1997 WL 767538, *4 (10th Cir. 1997) (internal citations omitted). *Cf. Anderson v. Cunningham*, 319 Fed. Appx. 706, 710 (10th Cir. 2009) (holding that a prisoner does not have a protected interest in earning good time credits because "under Colorado law, 'good time' credits are discretionary").

Plaintiff's due process claim also is based upon the allegation that her continued placement in administrative segregation imposed an atypical and significant hardship because she had limited access to visitation and legal information. A prisoner does not have a protected liberty interest in visitation privileges. *See Jenner v. McDaniel*, 123 Fed. Appx. 900, 905 (10th Cir. 2005). *Cf. Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (restrictions on visitation privileges do not represent "a dramatic departure from accepted standards for conditions of confinement"); *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (holding that plaintiff had no

constitutional right to visitation privileges); *Dunford v. McPeak*, 2008 WL 204481, *2 (W.D. Va. 2008) ("[n]either prisoners nor would-be visitors have a constitutional right to visitation . . . [i]n sum, visitation is a privilege, not a constitutional right"). Plaintiff's claim of reduced access to legal materials or legal information does not establish a protected liberty interest in the absence of any alleged actual injury. *Cf. Watson v. Dorsey*, 215 F.3d 1338 (10th Cir. 2000) (Table); *Vasquez v. Zavaras*, 82 F.3d 427 (10th Cir. 1996) (Table); *Gorton v. Miller*, 2009 WL 2252112, *3 (W.D. Okl. 2009). *See also Lewis v. Casey*, 518 U.S. 343, 349-53 (1996) (a plaintiff alleging denial of access to the courts must demonstrate he has suffered actual injury by showing that the defendant's acts hindered his ability to pursue a non-frivolous legal claim); *Twyman v. Crisp*, 584 F.2d 352, 357 (10th Cir. 1978) "restricted access to the law library is not per se denial of access to the courts").

The final factor for the court's consideration is the duration of Ms. Dodge's placement in administrative segregation. Ms. Dodge alleges that her placement in administrative segregation was "indefinite" but concedes that she was transferred from administrative segregation after one year. Although Ms. Dodge challenges the participation of Defendants Ahlin and Bokros, it is undisputed that Plaintiff's retention in administrative segregation was reviewed on a monthly basis. *See Hunt v. Sapien*, 480 F. Supp. 2d 1271, 1277 (D. Kan. 2007) ( holding that the plaintiff's placement in administrative segregation was not indefinite where his confinement was reviewed weekly and then monthly). *Cf. Hewitt v. Helms*, 459 U.S. at 477 n. 9 (while recognizing that prison officials must engage "in some sort of periodic review of the confinement of" inmates in administrative segregation, recognized that this review does "not

necessarily require that prison officials permit the submission of any additional evidence or statements"). *Cf. Proctor v. Kelly*, 2008 WL 5243925, *7 (N.D.N.Y. 2008) (noting that periodic reviews of a prisoner's status in administrative segregation "do not require the reviewer to always consider new information since the original reasons for placing the inmate in [administrative segregation] may continue to be compelling"). Moreover, Plaintiff's allegation that Defendants Ahlin and Bokros might have been biased solely because they were named as her victims in the state criminal case, standing alone, does not rise to a due process violation. *Cf. Brown v. Rios*, 196 Fed. Appx. 681, 684 (10th Cir. 2006).

As Plaintiff's placement in administrative segregation was not indefinite in any practical sense, the issue is whether the duration of that stay, either alone or in conjunction with other conditions of confinement, implicates due process rights. Unfortunately, the Tenth Circuit decisions addressing this issue do not provide clear guidance. *See, e.g., DiMarco v. Wyoming Department of Corrections*, 473 F.3d 1334, 1340-42 (10th Cir. 2007); *Jordan v. Federal Bureau of Prisons*, 191 Fed. Appx. 639, 651 n.8 (10th Cir. 2006), *cert. denied*, 550 U.S. 970 (2007); and *Thompson v. Winn*, 2008 WL 901570, **5-6 (D. Colo. 1008) Cir. 2006).

Without disregarding the implications of the foregoing discussion, the court will deny the Motion to Dismiss as it relates to the due process violations alleged in the Third Claim. My review of the prevailing case law suggests that the court's due process determination is highly fact dependent "and requires consideration of a number of nonexclusive factors, viewed in their totality." *Cf. Thompson*, 2008 WL 901570 at *6. That determination is more appropriately made in light of a fully developed record. *Cf. Payne v. Fiel*, 266 Fed. Appx. 724, 728 (10th Cir.

2008) (holding that where a prisoner alleges a due process violation based on conditions of administrative segregation, "the district court must conduct an evidentiary analysis to determine whether the duration of the confinement was itself atypical and significant") (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006). The merits of Plaintiff's due process claim should be resolved through summary judgment or trial.

In support of their defense of qualified immunity, Defendants Ahlin and Bokros insist "there is no established law in this jurisdiction that states that the actions of the Defendants, as alleged in the Complaint, violated any law." Notably, Defendants have not cited any legal authorities in support of that proposition. *See* Defendants' Motion to Dismiss, at 23. By necessity, the court has done its own legal research.

> For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say an official action is protected by qualified immunity unless the very action in question has previously been held unlawful., but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Here, the question is whether Supreme Court and Tenth Circuit case law existing at the time Ms. Dodge was held in administrative segregation was sufficiently clear to provide Bokros and Ahlin with reasonable notice.

The Supreme Court's decision in *Sandin* marked a significant departure from prior case law by holding that liberty interests may arise from prison conditions that present an atypical, significant deprivation. In *Wilkinson v. Austin,* 545 U.S. 209 (2005), the Supreme Court again acknowledged that conditions of confinement, when viewed in combination, can impose an

atypical and significant hardship that trigger due process rights. I find that by June 13, 2005, when *Wilkinson* was decided, the contours of constitutional law were sufficiently clear that prison officials were on notice that the assignment of a prisoner to administrative segregation under conditions that imposed a significant and atypical hardship in relation to the ordinary incidents of prison life could give rise to a protected liberty interest. To the extent that Ms. Dodge remained in administrative segregation after June 13, 2005, the defense of qualified immunity is not available. *Cf. Thompson,* 2008 WL 901570, *8. *Compare Hill v. Fleming*, 173 Fed. Appx. 664, 675 (10th Cir. 2006) (where plaintiff was maintained in administrative detention from February 2001 to March 2002, held that Tenth Circuit cases existing at the time of Plaintiff's detention would not place prison officials on notice of a constitutional deprivation arising from confinement in administrative detention under comparable conditions).

To the extent that the Third Claim purports to assert a First Amendment retaliation claim, I find the allegations suffice to survive challenge under Rule 12(b)(6). Ms. Dodge alleges that Defendants Ahlin and Bokros abused their authority by continuing her administrative segregation placement for 366 days because they were "alleged victims of Ms. Dodge." It is well-established that prison "officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted). *See also Duncan v. Magelssen*, 2009 WL 712387, *6 (D. Colo. 2009) ("It is well settled that prisoners' filing of grievances is activity protected by the First Amendment").

To allege a First Amendment retaliation claim, "[a] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Id.* at 1144 (internal quotation marks and citation omitted).

The Third Claim alleges that Plaintiff remained in administrative segregation for 366 days because her alleged victims, Ahlin and Bokros, "refused to allow her to be returned to the regular prison population in retaliation against Ms. Dodge." *See* Second Amended Verified Complaint, at ¶ 114. However, Plaintiff also alleges that criminal charges were not filed against her until March 16, 2005. Exhibits attached to Plaintiff's Amended Complaint (doc. # 10) suggest that by January 8, 2006, Defendant Ahlin was aware that "DWCF Investigations has filed criminal charges with Denver County" and that by March 8, 2006, Ms. Ahlin was on notice that "[t]his case is being filed by the Denver DA." Suffice to say, there remain unresolved factual issues on this record as to whether and when Defendants Ahlin and Bokros first learned they were alleged "victims" for purposes of Ms. Dodge's state criminal prosecution, and whether Plaintiff received meaningful reviews of her administrative segregation status, rather than sham reviews by biased prison officials, as she contends. *See Kelly v. Brewer,* 525 F.2d 394, 400 (9th Cir. 1975) ("where an inmate is held in segregation for a prolonged or indefinite period of time due process requires that his situation be reviewed periodically in meaningful way . . ."); *McClary v. Coughlin*, 87 F. Supp. 2d 205, 214 (W.D.N.Y. 2000) ("a fundamental requirement of all due process is that it be 'meaningful' and not a sham or fraud") (citation omitted). These

factual issues are not properly resolved on a motion to dismiss.

B.    First and Fourth Claims for Relief

In her First Claim for Relief, Plaintiff Dodges alleges that Defendants Shoemaker and Bokros violated the Eighth Amendment by failing to train Department of Corrections employees on the proper use of authority with respect to inmates under their authority in administrative segregation, and by failing to protect inmates in administrative segregation from retaliation or abuses of authority by these same Department employees.  The First Claim states that Shoemaker and Bokros "knew or had reason to know that their employees who had complete control over inmates within the prison system would foreseeably use their authority and influence to retaliate against inmates under their control."  *See* Second Amended Verified Complaint, at ¶ 88.

Plaintiff's Fourth Claim contends that Defendants Shoemaker and Bokros violated her First Amendment rights by failing to "to provide for policies and practices to protect inmates who protest their mistreatment to public officials."  *Id.* at ¶ 122.  According to the Fourth Claim, Shoemaker and Bokros are liable because "the need for specialized policies, procedures, customs, training, supervision and discipline is so obvious, and the inadequacy of such is so likely to result in the violation of constitutional rights leading to intimidation of victims."  *Id.* at ¶ 124.

Notwithstanding these sweeping assertions, the Second Amended Verified Complaint is virtually devoid of pertinent factual allegations relating to Shoemaker and Bokros.  The operative pleading alleges that on or about April 10, 2005, Ms. Dodge sent a letter to Warden

Shoemaker "stating that she had been raped by Lieutenant Fringer and asking for assistance." *Id.* at ¶ 14. The Second Amended Verified Complaint also alleges that "[f]rom 6/10/05 through 12/14/05, William Bokros approved Ms. Dodge's retention in Administrative Segregation," *id.* at ¶ 45, and that Defendant Bokros "continued to sign off for [Plaintiff's] continued placement in Administrative Segregation" despite Ms. Dodge receiving good reviews regarding her behavior. *Id.* at ¶ 50. Plaintiff alleges that Defendant Bokros was named as a victim in her state criminal case, *id.* at ¶ 51, and that Bokros and Shoemaker "were at all relevant times and on the issues relevant herein, policymakers for the Colorado Department of Corrections." *Id.* at ¶ 69.

It is understood that a defendant may not be held liable for constitutional violations merely because he or she holds a supervisory position. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). A supervisor's liability under § 1983 "must be predicated on the supervisor's deliberate indifference" and a plaintiff "must show that an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). "[A] supervisor . . . may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Davidson v. Kansas*, 2001 WL 533207, *4 (D. Kan. 2001) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988)). Stated differently, "[s]upervisory liability exists even without personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."

25

*Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (holding that the existence of a

constitutionally deficient policy cannot be inferred from a single wrongful act).

The Tenth Circuit recently addressed the issue of supervisor liability under § 1983 and

*Bivens* in *Arocho v. Nafziger*, 2010 WL 681679, *3 n.4 (10th Cir. 2010), noting that "the basic

concept of . . . supervisory liability itself may no longer be tenable" in light of the Supreme

Court's decision in *Ashcroft*, 129 S.Ct. at 1937.  The Tenth Circuit cited the Supreme Court's

discussion of supervisory liability:

> Absent vicarious liability, each Government official, his or her title
> notwithstanding, is only liable for his or her own misconduct.  In the context of
> determining whether there is a violation of a clearly established right to overcome
> qualified immunity, purpose rather than knowledge is required to impose . . .
> liability on the subordinate for unconstitutional discrimination; the same holds
> true for an official charged with violations arising from his or her superintendent
> responsibilities.

*Arocho v. Nafziger,* 2010 WL 681679, at *10 (quoting *Ashcroft* , 129 S.Ct. at 1949)).

Here, the First and Fourth Claims merely allege that Defendants Shoemaker and Bokros,

by virtue of their supervisory status, were in positions to establish policies or practices that

would prevent or correct the violations that Ms. Dodge claims she suffered.  Plaintiff has not

alleged that Defendants Shoemaker or Bokros knew of or participated in the original decision to

place her in administrative segregation.  At best, Ms. Dodge presumes that Shoemaker and

Bokros should have been aware of a substantial risk that subordinate employees would exploit

their authority to retaliate against prisoners who protest misconduct.  However, "[i]t is not

enough to establish that the official should have known of the risk of harm."  *Smith v. Ward*,

2009 WL 1652267, *6  (W.D. Okla. 2009) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310

(10th Cir. 1998)).

To withstand a motion to dismiss, a plaintiff is required to offer more than conjectural allegations or sweeping generalizations. The Supreme Court emphatically made this point in *Ashcroft*, 129 S.Ct. at 1950:

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

Without the requisite factual allegations, the First and Fourth Claims seek to impose liability under a theory of respondeat superior, which is not sustainable under § 1983. *Cf. Smith v. Maschner*, 899 F.2d 940, 950-51 (10th Cir. 1990). *See also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[s]upervisory status alone does not create § 1983 liability").

Accordingly, the First and Fourth Claims must be dismissed. Because I find that Ms. Dodge has not alleged a constitutional violation in either the First or Fourth Claims for Relief, it is unnecessary for the court to reach the question of whether Defendants Shoemaker or Bokros are protected by qualified immunity as to these claims. Defendant Bokros may still be liable under the Third Claim for Relief based upon his personal participation.

D.      Second Claim for Relief

Plaintiff also alleges a conspiracy by Defendants Ahlin, Bokros, Thiede and Altholz "to intimidate Ms. Dodge into recanting her allegations of sexual assault against Lieutenant Fringer in an effort to conceal the circumstances of Ms. Dodge's rape," in violation of 42 U.S.C. § 1985. *See* Second Amended Verified Complaint, at ¶ 104. Defendants Thiede and Altholz are only

included in the Second Claim for Relief.

Plaintiff's Response to the Motion to Dismiss devotes a single paragraph to her conspiracy claim. In her Response, Ms. Dodge concedes that without discovery she "cannot prove that the Defendants worked together"and that the conspiracy claim relies solely on inferences that Plaintiff draws from isolated statements made by individual defendants. Notably, Plaintiff's Response does not cite to a single case that would support the Second Claim for Relief. The brevity of Plaintiff's argument is understandable.

To survive a motion to dismiss, a complaint alleging a conspiracy to deprive a person of constitutional rights must contain more than conclusory, vague or general allegations of conspiracy. *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993). *Cf. Scott v. Hern*, 216 F.3d 897, 908 (10th Cir. 2000) (upholding dismissal of an amended complaint that failed to provide factual averments as to the nature of the alleged conspiracy or the defendant's role in the alleged activities); *Alfaro v. E.F. Hutton & Co.*, 606 F. Supp. 1100, 1117-18 (E.D. Pa. 1985) (holding that a general conspiracy allegation without a statement of facts is insufficient to state a cause of action). The Tenth Circuit has recently reiterated that conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim. *See Kirby v. Dallas County Adult Probation Department*, 2009 WL 5064789, *4 (10th Cir. 2009) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)) (to state a valid conspiracy claim, "a plaintiff is required to 'allege specific facts showing agreement and concerted action'"). In this case, the Second Amended Verified

Complaint offers nothing more than legal conclusions and speculative assumptions.[8]

Indeed, four of the seven paragraphs that comprise the Second Claim contain allegations premised on "information and belief." The Second Claim cannot support a conspiracy claim in the absence any factual allegations that demonstrate an agreement or concerted actions by the named defendants. *Cf. Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (holding that the district court properly dismissed plaintiff's conspiracy claim with prejudice where the plaintiff inmate failed to allege specific facts showing agreement and concerted action among the defendants; "conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim"). *See also Loftus v. Southeastern Pennsylvania Transportation Authority*, 843 F. Supp. 981, 987 (E.D. Pa. 1994) (noting that "parallel but independent action by actors does not import conspiracy"); *Sales v. Murray*, 862 F. Supp. 1511, 1517 (W.D. Va. 1994) (a conspiracy complaint must allege facts suggesting agreement or a meeting of the minds). The Second Amended Verified Complaint does not describe any communication, cooperation or concerted action from which a conspiracy between Defendants Ahlin, Bokros, Thiede and Altholz could be inferred. *See Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999) (conspirators must act with a single plan, the general nature and scope of which is known to each would-be conspirator); *Tonkovich v. Kansas Board of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (holding

---

[8]Ms. Dodge cannot find refuge in the less stringent pleading standards accorded *pro se* litigants as the Second Amended Verified Complaint was filed by her counsel. *See Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 437 (6th Cir. 2008) ("complaints drafted by attorneys are held to a more stringent standard than those drafted by *pro se* litigants"); *Healey v. Scovone*, 188 F.3d 518, *1 n.1 (10th Cir. 1999) (Table) (declining to liberally construe a complaint filed by a plaintiff represented by counsel).

that a conspiracy claim under § 1983 requires the allegation of "specific facts showing an agreement and concerted action among the defendants"). Plaintiff's conclusory allegations of a conspiracy are not sufficient to survive a motion to dismiss. *Scott,* 216 F.3d at 908.

Plaintiff cannot overcome these deficiencies by bringing the Second Claim under 42 U.S.C. § 1985. Ms. Dodge has not cited any precedent that could be construed as supporting a lesser pleading threshold for alleging a conspiracy claim under § 1985. A conspiracy claim that fails to set forth facts showing an agreement *and* concerted action among the defendant is fatally deficient whether pled under § 1983 or § 1985. *Cf. Hines v. Jones*, ___ F. Supp. 2d ___, 2009 WL 3448222, *12 (W.D. Okl. 2009). The conspiracy claim in Plaintiff Second Amended Verified Complaint cannot withstand challenge under Rule 12(b)(6).

4.      *Heck v. Humphrey*

To the extent that Plaintiff is challenging her initial placement in administrative segregation, Defendants argue that Ms. Dodge's claims are barred under *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994) ("a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated") and *Edwards v. Balisok*, 520 U.S. 641, 643-47 (1997) (prisoner could not bring a § 1983 claim until the disciplinary decision was overturned where the prisoner alleged defects in the hearing resulting in administrative segregation and revocation of good-time credits).

*Heck* and *Balisok* limit only challenges to the fact or duration of a prisoner's sentence, not the conditions of his confinement. *See Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006) ("the

favorable termination requirement is not intended to compel a prisoner to demonstrate that a sanction he seeks to challenge . . . has been invalidated before he can proceed under § 1983 when that sanction does not affect his term of confinement"), *cert. denied*, 127 S.Ct. 3006 (2007). During oral argument on December 15, 2009, defense counsel conceded that *Heck* would not bar Plaintiff's Third Claim, as that Claim could not invalidate any underlying conviction if successful. *See* Transcript of Hearing (doc. # 117), at 5. *See also Muhammad v. Close*, 540 U.S. 749, 751-52 (2004); *Slack v. Jones*, 2009 WL 3166963, *3 (10th Cir. 2009) (holding that *Heck* did not apply where the plaintiff-prisoner was challenging the conditions of his confinement and the loss of privileges). Accordingly, Defendants' motion is denied as to this affirmative defense.

5.      *Statute of Limitations*

Defendants have moved to dismiss Plaintiff's claims that accrued prior to April 11, 2006, arguing those claims are barred by the applicable statute of limitations. According to Defendants,

> [t]he essence of Dodge's Complaint is that Defendants had her placed in administrative segregation (sic) May 5, 2005 until May 6, 2006 for the purpose of retaliating against her for attempting to report that she had allegedly been sexually assaulted, to intimidate her into not pursuing any other remedies, and for victimizing them as set forth in Denver County criminal case number 06CR1728.

*See* Motion to Dismiss, at 4. Thus, Defendants argue the limitations period began to run when Ms. Dodge was placed in administrative segregation and that Plaintiff is limited to those claims that accrued within two years of the filing of her original Complaint on April 11, 2008.

With the dismissal of Plaintiff's First, Second and Fourth Claims, the court's consideration of the limitations defense is confined to Ms. Dodge's Third Claim against Defendants Bokros and Ahlin. Plaintiff argues that her due process claim did not accrue until she was released from administrative segregation because the claim is based on both the duration and conditions of her confinement. *Cf. Arauz v. Bell*, 307 Fed. Appx. 923, 927-28 (6th Cir. 2009) (holding that the district court erred by concluding the limitations period for plaintiff's due process began to run as soon as plaintiff was placed in administrative segregation; "it is difficult to select an exact moment at which [Plaintiff's] segregation became so restrictive and prolonged as to put him on notice that he should have known of his injury"). As for the retaliation component of her Third Claim, Plaintiff contends she could not assert that legal theory until she learned that Ahlin and Bokros had been named as victims in her state criminal case. The Second Amended Verified Complaint alleges that Ms. Dodge did not become aware of Bokros' and Ahlin's status as "victims" until her arraignment in the state criminal case on May 3, 2006. *See* Second Amended Verified Complaint, at ¶¶ 51 and 54.

Federal courts look to the applicable state statute of limitations to determine the timeliness of a claim under § 1983. *See Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993). Colorado law provides a two-year statute of limitations for actions brought pursuant to § 1983. *See* Colo. Rev. Stat. § 13-80-102(g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided"); *Blake*, 997 F.2d at 750 (applying § 13-80-102 to § 1983 claim).

32

The determination of when a § 1983 action accrues is controlled by federal rather than state law. *Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) (citation omitted). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action." *Industrial Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 632 (10th Cir. 1993). Thus, under Colorado's applicable two-year statute of limitations provision, Ms. Dodge's Third Claim is timely if that claim accrued on or after April 4, 2006.

Although statutes of limitation "have long been respected as fundamental to a well-ordered judicial system," *Board of Regents of University of State of New York v. Tomanio*, 446 U.S. 478, 487 (1980), motions to dismiss on statute of limitations grounds generally are not favored. *See, e.g., FDIC v. Frates*, 44 F. Supp.2d 1176, 1203 (N.D. Okla. 1999). *Cf. Tolbert v. National Harmony Memorial Park*, 520 F. Supp.2d 209, 211 (D.D.C. 2007) ("[B]ecause statute of limitations issues often depend upon contested questions of fact, 'courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint'"). The facts concerning Ms. Dodge's conditions of confinement in administrative segregation and her discovery of Ahlin's and Bokros' roles in reviewing her continued placement in administrative segregation have not been developed to a sufficient extent to allow this court to determine in the context of a motion to dismiss when the Third Claim accrued.

Resolving the statute of limitations defense may also implicate Ms. Dodge's statutory

obligation to exhaust her administrative remedies as required by the Prison Litigation Reform

Act ("PLRA"), 42 U.S.C. § 1997e(a). *See* Transcript of Hearing (doc. # 117), at 8. The PRLA

provides:

> No action shall be brought with respect to prison conditions under section 1983 of
> this title, or any other Federal law, by a prisoner confined in a jail, prison, or other
> correctional facility until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and

that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211, 218

(2007) ("to properly exhaust administrative remedies prisoners must complete the administrative

review process in accordance with the applicable procedural rules, – rules that are defined not by

the PLRA, but by the prison grievance process itself") (internal quotation marks and citation

omitted). "Compliance with prison grievance procedures, therefore, is all that is required by the

PLRA to 'properly exhaust.' "[9] *Id.* at 218-19.

---

[9]The court may take judicial notice of the Colorado Department of Correction's
administrative process. *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984)
(court can take judicial notice of agency rules and regulations). Department administrative
regulations provide that the grievance procedure may not be used to seek review of
administrative segregation placement or Code of Penal Discipline convictions. *See* Colorado
Department of Corrections, Administrative Regulation 850-04. The Second Amended Verified
Complaints contends that Plaintiff was placed in administrative segregation after she refused to
withdraw a grievance claiming that she had been raped by Lieutenant Fringer. *See* Second
Amended Verified Complaint, at ¶¶ 19, 21-23. Administrative Regulation 850-04 specifically
states that

> Reprisals for the good faith use of, or participation in the grievance procedure are
> prohibited. An offender shall be entitled to pursue a complaint, through the
> grievance procedure, that a reprisal occurred.

Ms. Dodge attached to her original Complaint a Step 3 form for Grievance Number DW0506-345. *See* Exhibit B attached to Complaint (doc. # 5). This Step 3 grievance, dated June 13, 2006, challenged Ms. Ahlin and Mr. Bokros' involvement in reviewing Plaintiff's continued placement in administrative segregation based on their status as victims in her state prosecution. However, Ms. Dodge also attached exhibits to the proposed Amended Complaint (doc. # 62, filed on December 11, 2008. Included among those documents were the Step 1 and Step 2 submissions for Grievance Number DW0506-345. Those grievance forms do not mention Mr. Bokros at all. The Step 1 form, submitted on or about February 22, 2006, challenges Plaintiff's placement in administrative segregation and attributes that status to Ms. Ahlin's "fraudulent statements." The Step 2 form, dated March 22, 2006, claims that Ms. Dodge has been improperly assigned to administrative segregation and says that

> I am innocent . . . Ms. Ahlin says she plans to keep me in ad seg for another year or more . . . she will keep me until the charges are resolved . . . All offenders are entitled to monthly reviews. Obviously I will <u>never</u> receive a fair review.

This Step 2 grievance makes no mention of Mr. Bokros or Defendants' status as named victims in the state criminal case.

The court draws no conclusions from the foregoing review of court documents tendered by Ms. Dodge. Defendants have not raised the issue of exhaustion in their Motion to Dismiss. I

---

*Cf. Zarska v. Higgins*, 171 Fed. Appx. 255, 258 (10th Cir. 2006) (noting that "[a]n allegation of retaliation by the filing of a disciplinary charge does not necessarily require an attack on the disciplinary charge itself").

also recognize that dismissal for failure to exhaust administrative remedies usually cannot be made on the pleadings without proof. *See Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007) ("'only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies and that he is without a valid excuse'"). This issue must be left for another day.

## CONCLUSION

Therefore, it is ORDERED as follows:

1.      That Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's claims against Defendants in their official capacities, and her claims for compensatory damages. Those claims are hereby dismissed with prejudice. Pursuant to this ORDER, Defendants' Motion is GRANTED as to Plaintiff's First, Second and Fourth Claims for Relief and Defendants Shoemaker, Thiede and Altholz are hereby dismissed without prejudice from this action.

2.      That in all other respects Defendants' Motion to Dismissed is DENIED.

3.      An in-person Status Conference shall be held on Wednesday April 14, 2010 at 9:15 a.m., in Courtroom A-402, Fourth Floor, of the Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado to review the status and further scheduling of the case.

DATED this 11th day of March, 2010.

BY THE COURT:


  s/Craig B. Shaffer
United States Magistrate Judge

36