IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 08-cv-00738–CBS-KLM (consolidated with 08-cv-01436-CBS)

MAEGHAN DODGE,
     Plaintiff,
v.

DEBRA AHLIN, and
WILLIAM BOKROS,
     Defendants.

_____

MEMORANDUM OPINION AND ORDER
_____

This civil action comes before the court on: (1) Defendants' Motion for Summary

Judgment (filed October 18, 2010) (Doc. # 126); and (2) Defendants' Motion in Limine

(filed November 22, 2010) (Doc. # 133).  On September 16, 2008, the above-captioned

case was referred to Magistrate Judge Craig B. Shaffer to handle all dispositive matters

including trial and entry of a final judgment in accordance with 28 U.S.C. 636(c), Fed. R.

Civ. P. 73, and D.C. COLO. LCivR 72.2.  (*See* Docs. # 44, # 45).  The court has

reviewed the Motion, Ms. Dodge's Response to Defendants' Motion for Summary

Judgment (filed November 17, 2010) (Doc. # 132), Defendants' Reply in Support of

Motion for Summary Judgment (filed December 1, 2010) (Doc. # 135), the exhibits and

affidavits, the entire case file, the arguments presented by counsel at the hearing held

on January 3, 2011, and the applicable law and is sufficiently advised in the premises.


I.     Statement of the Case

At all times relevant to the Second Amended Verified Complaint ("SAVC"), Ms.

Dodge was incarcerated at the Denver Women's Correctional Facility ("DWCF") in the

Colorado Department of Corrections ("CDOC").  (*See* Doc. # 93 at ¶¶ 4-5).  Defendant

Bokros was Associate Warden of the Denver Complex, which includes DWCF.  (*See*

Affidavit of William Bokros (Doc. # 126-1) at ¶ 2).  Defendant Ahlin was a Case Manager

III at the DWCF who supervised Ms. Dodge.  (*See* Affidavit of Deborah Ahlin (Doc. #

126-5) at ¶¶ 2-3).  Pursuant to the court's "Order Regarding Defendants' Motion to

Dismiss . . . ," the two remaining claims brought pursuant to 42 U.S.C. § 1983 include:

(1) a due process claim as set forth in Claim Three against Defendants Bokros and

Ahlin based on Ms. Dodge's continued placement in administrative segregation, and (2)

a First Amendment retaliation claim as set forth in Claim Three against Defendants

Bokros and Ahlin based on abuse of their authority in continuing Ms. Dodge's

administrative segregation after they were named as alleged victims of criminal charges

filed against her in March 2005.  (*See* Doc. # 118 at pp. 14-15, 20, 22-24 of 36;  Doc. #

93 at ¶¶ 110-118).  Ms. Dodge's claims against Defendants in their official capacities

were dismissed, thus Defendants Bokros and Ahlin remain in the suit only in their

individual capacities.  Ms. Dodge's claim for compensatory damages was dismissed,

limiting her claim for damages to punitive and unspecified "special"  damages.  (*See*

Doc. # 118 at pp. 12, 36 of 36; Doc. # 93 at p. 22 of 22).[1]  Defendants move for

summary judgment on the remaining two claims on the grounds: (1) that Ms. Dodge has

not demonstrated that they committed a due process violation and thus they are entitled

to qualified immunity; (2) that Ms. Dodge has not demonstrated that they committed

---

[1]    Ms. Dodge has not alleged any claim for nominal damages.  (*See* Doc. # 93 at p. 22 of 22).

retaliation in violation of her First Amendment rights and thus they are entitled to qualified immunity; and (3) that Ms. Dodge fails to demonstrate any basis for an award of punitive damages.

II.    Standard of Review

"Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." *Montgomery v. Board of County Commissioners of Douglas County, Colorado*, 637 F. Supp. 2d 934, 939 (D. Colo. 2009) (internal quotation marks and citations omitted).  Defendants raise the defense of qualified immunity.  "[W]e review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions."  *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

Whether Defendants are entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 552 U.S. 1181 (2008).  "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."  *Martinez*, 563 F.3d at 1088 (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815-16 (2009)).  In determining whether a constitutional violation occurred, the court must view "the facts in the light most favorable to the plaintiff."  *Kelley v. City of Albuquerque*, 542 F.3d 802, 821 (10th Cir.

3

2008).  Only if Ms. Dodge satisfies both of these prongs will the burden shift to

Defendants to assume the normal burden of showing that there are no disputed material

facts and that they are entitled to judgment as a matter of law.  *Clark v. Edmunds*, 513

F.3d 1219, 1222 (10th Cir. 2008).  If "the plaintiff fails to carry either part of his two-part

burden, the defendant is entitled to qualified immunity."  *Albright v. Rodriguez*, 51 F.3d

1531, 1535 (10th Cir. 1995).  *See also Wilder*, 490 F.3d at 813 ("If the [defendant]'s

conduct did not violate a constitutional right, the inquiry ends and the [defendant] is

entitled to qualified immunity.") (citation omitted).  While it will often be appropriate to

conduct the qualified immunity analysis by first determining whether a constitutional

violation occurred and then determining whether the constitutional right was clearly

established, the order of those analytical steps is no longer mandatory.  *See Pearson*,

129 S.Ct. at 818 (overruling *Saucier v. Katz*, 533 U.S. 194 (2001)).


III.    Analysis

Ms. Dodge alleges a claim for relief pursuant to 42 U.S.C. § 1983 for

"Substantive and Procedural Due Process" (*see* Doc. # 93 at pp. 18-20 of 22), which

has been interpreted by the court as also encompassing a claim for retaliation in

violation of her First Amendment rights.  (*See id.* at ¶¶ 114, 117;  Doc. # 118 at pp. 15,

22-24).  Title 42 U.S.C. § 1983 creates a cause of action where a  "person . . . under

color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects,

or causes to be subjected, any citizen of the United States or other person . . . to the

deprivation of any rights, privileges or immunities secured by the Constitution."  Section

1983 does not create any substantive rights; rather, it creates only a remedy for

violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

1.    Due Process Claim

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.' " *Estate of DiMarco v. Wyoming Dept. of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) (quoting U.S. Const. Amend. XIV). "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) (citation omitted). In *Sandin v. Conner*, the Supreme Court held that an inmate's liberty interest is protected under the Due Process Clause if the restraints or conditions imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. 472, 484 (1995). The Tenth Circuit Court of Appeals has ruled that liberty interest claims by prisoners are "to be reviewed under *Sandin's* atypical-and-significant-deprivation analysis." *Steffey*, 461 F.3d at 1221 (citing *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (other citations omitted)). "The Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State

5

might conceivably create a liberty [or property] interest.' " *Cosco*, 195 F.3d at 1224

(alteration in original, quoting *Sandin v. Conner*, 515 U.S. 472, 486 (1995)).  "[T]he

touchstone of the inquiry . . . is not the language of regulations regarding those

conditions but the nature of those conditions themselves in relation to the ordinary

incidents of prison life."  *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (internal

quotation marks and citation omitted).  Whether confinement "conditions impose such

an atypical and significant hardship that a liberty interest exists is a legal determination.

. . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at

485-87).

 The Tenth Circuit has identified relevant factors to consider when determining

whether placement in administrative segregation implicates a protected liberty interest:

(1) whether "the segregation relates to and furthers a legitimate penological interest,

such as safety or rehabilitation; (2) [whether] the conditions of placement are extreme;

(3) [whether] the placement increases the duration of confinement . . . ; and (4)

[whether] the placement is indeterminate."  *DiMarco*, 473 F.3d at 1342.  "[A]ny

assessment must be mindful of the primary management role of prison officials who

should be free from second-guessing or micro-management from the federal courts."

*DiMarco*, 473 F.3d at 1342 (citation omitted).

 During her incarceration at the DWCF, on May 2, 2005, Ms. Dodge was served

with a Notice of Administrative Segregation Hearing.  (*See* Doc. # 126-1 ¶ 8;  Doc. #

126-1 at p. 7 of 8).  The Notice alleged that Ms. Dodge made telephone calls to her

husband in April 2005 in which she discussed bringing contraband into the visiting room

at the DWCF.  (*See id.*; Doc. # 126-1 at ¶¶ 9-10).  Because Ms. Dodge's actions posed

a threat to the security of staff and offenders, she was referred to an administrative segregation hearing which occurred on May 5, 2005.  (*See id.*; Doc. # 126-1 at ¶ 11). On May 5, 2005, Ms. Dodge was placed in administrative segregation. (*See* Doc. # 93 at ¶¶ 23, 110; Doc. # 126-1 ¶¶ 7, 13; Doc. # 126-5 at ¶ 6).  On May 9, 2005 Defendant Bokros, as administrative head, affirmed the decision to place Ms. Dodge in administrative segregation.  (*See* Doc. # 126-1 at ¶ 14).

Regarding the first enumerated factor, Ms. Dodge does not refute that she was initially placed in administrative segregation based on conspiring with her husband through a telephone call to bring contraband into the DWCF.  The evidence before the court indicates that "the introduction of contraband, or the attempt thereof, into a facility is treated very seriously in the prison system."  (*See* Doc. # 126-1 at ¶ 19-20).  The seriousness of Ms. Dodge's actions that resulted in her initial placement in administrative segregation was a factor that justified her continued placement in administrative segregation. (*Id.* at ¶ 21).  Ms. Dodge's assignment to and retention in administrative segregation was therefore related to legitimate penological interests. *See Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) (administrative segregation due to legitimate concerns about prison security did not impose an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life).

Second, Ms. Dodge makes no allegations of any "atypical and significant hardship," other than general conclusory allegations of lost privileges.  (*See* Doc. # 93 at ¶ 42 ("Inmates kept in Administrative Segregation do not have adequate access to law books, information about how to obtain a lawyer of other ways in which to discover how to redress legal wrongs committed against them.  They also have limited access to

visitation and visits from non-lawyers are closely monitored.")).  Ms. Dodge has not

alleged conditions that were sufficiently atypical or significant in relation to the ordinary

incidents of prison life to implicate a liberty interest.  Further, the conditions in

administrative segregation have previously been determined not to give rise to a

protected liberty interest.  *See, e.g., DiMarco*, 473 F.3d at 1343 (deprivations resulting

from confinement in administrative segregation did not impose such an atypical and

significant hardship as to meet the *Sandin* standard);  *Talley v. Hesse*, 91 F.3d 1411,

1413 (10th Cir. 1996) (placement in administrative segregation did not give rise to a

liberty interest).

As to the third factor, Ms. Dodge alleges that her placement in administrative

segregation was indefinite.  The evidence is undisputed that Ms. Dodge was no longer

retained in administrative segregation as of May 6, 2006.  (*See* Doc. # 126-5 at ¶¶ 29-

30;  Doc. # 93 at ¶ 111).  Thus, Ms. Dodge's placement in administrative segregation

was not "indeterminate" or "indefinite."  Nor does Ms. Dodge's allegation of placement in

administrative segregation for a period of one year state a claim for atypical and

significant restraint deserving due process protections.  *See Riley v. Carroll*, 200 Fed.

Appx. 157, 159 (3d Cir. 2006) ("administrative custody for fifteen months is not an

atypical and significant hardship");  *Gutierrez v. Shanks*, 153 F.3d 727, 1998 WL

380958, at *2 (10th Cir. July 9, 1998) (unpublished) (instructing in a motion to dismiss

case that administrative segregation for over one year was not sufficient to distinguish

confinement from that of other inmates for the purpose of creating a liberty interest);

*Jones v. Fields*, 104 F.3d 367, 1996 WL 731240, at *1-2 (10th Cir. Dec. 20, 1996)

(unpublished) (holding fifteen-month administrative segregation did not impose atypical

8

and significant hardship on inmate for purpose of summary judgment disposition); *Wright v. Miller*, 973 F. Supp. 390, 394 (S.D.N.Y. 1997) (plaintiffs' 12 and 15 month SHU terms may have imposed an atypical and significant hardship).

Ms. Dodge further alleges that her retention in administrative segregation for one year without meaningful periodic reviews may constitute atypical and significant restraint deserving due process protections.  The due process right to a periodic review of administrative confinement derives from *Hewitt v. Helms*, where the Supreme Court stated that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate."  459 U.S. 460, 477 n. 9 (1983).  The Court found that "prison officials must engage in some sort of periodic review of the confinement of such inmates."  *Id.  See also McClary v. Coughlin*, 87 F. Supp. 2d 205, 214 (W.D.N.Y. 2000) ("a fundamental requirement of all due process is that it be 'meaningful' and not a sham or a fraud") (citation omitted);   *Kelly v. Brewer*, 525 F.2d 394, 400 (8th Cir. 1975) ("where an inmate is held in segregation for a prolonged or indefinite period of time due process requires that his situation be reviewed periodically in a meaningful way . . .").

The next question would be what process was due.  *See Wilkinson*, 545 U.S. at 224, 125 S.Ct. 2384 (applying framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976)).  Such "review will not necessarily require that prison officials permit the submission of any additional evidence or statements."  *Id.*  "The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner - which will have been ascertained when determining to confine the inmate to administrative segregation - and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for 'proof' in any highly structured manner."

9

*Id.*[2]  *Hewitt* makes clear that the periodic review process need not be formalized.

In determining whether review was "meaningful," the limited nature of the due process right must be emphasized.  Input from the inmate is not "necessarily require[d]" and the decision may be made based on facts which have been ascertained at the initial hearing combined with an "official's general knowledge of prison conditions and tensions."  *Hewitt*, 459 U.S. at 477 n. 9.  It must also be noted that it is Ms. Dodge who has the burden of proving a due process violation; Defendants do not have the burden of disproving such an allegation.

The evidence does not support Ms. Dodge's assertion that she received sham rather than meaningful reviews of her administrative segregation status.  Ms. Dodge's placement in administrative segregation was reviewed by the classification committee in accordance with the CDOC Administrative Regulation 600-02.  (*See* Doc. # 126-5 at ¶¶ 7-17).  During the time Ms. Dodge was assigned to administrative segregation, Defendant Ahlin, as her case manager, was one of three classification committee members that reviewed her continued placement in administrative segregation. (*Id.* at ¶¶ 14, 20).  The reviews took place every seven days for the first two months of confinement in administrative segregation and then every 30 days thereafter.  (*See* Doc. # 126-5 at ¶ 10;  Doc. # 132-4 at pp. 1-17 of 17).  The reviews included consideration of whether the reasons for initial placement in administrative segregation still existed.  (*See id.* at ¶ 11, pp. 1-17 of 17).  After each review process was completed, the three classification members were required to come to an agreement as to whether a

---

[2]    This portion of the holding in *Hewitt* has not been superannuated by later case law.

recommendation the offender should be given recommendation that their placement should be continued in administrative segregation.  (*See* Doc. # 126-5 at ¶¶ 15, 20).  If the committee is in agreement, the review form is submitted to the facility's Administrative Head or a designee, who may approve or deny the committee's recommendations.  (*See id.* at ¶ 20).  To complete the reviews, Defendant Ahlin met with the Associate Wardens, either Defendant Bokros or Noble Wallace.  (*See id.* at ¶ 21).  The reviews were documented utilizing Administrative Regulation ("AR") Form 600-02C, "Administrative Segregation Hearing Review".  (*See* Doc. # 126-5 at ¶ 12; *see also* Doc. # 126-5 at p. 15 of 39 (AR No. 600-02, indicating that "the status of an offender who had a classification hearing which resulted in assignment to administrative segregation shall be reviewed" on a regular and frequent basis); Doc. # 132-4 at pp. 1-17 of 17 (documented regular reviews)).

Defendant Ahlin's review process included gathering information from people who came into contact with Ms. Dodge, such as housing staff, facility lieutenants, any facility captains.  (*See* Doc. # 126-5 at ¶ 16).  Defendant Ahlin's periodic reviews were based upon information obtained from her contact with Ms. Dodge during the review period, entries in the chronological logs entered by housing staff, and any incident reports.  (*Id.* at ¶ 17).  Defendant Bokros was also involved in reviewing Ms. Dodge's continued placement in administrative segregation.  (*See* Doc. # 126-1 at ¶¶ 5, 15-17).  Defendant Bokros' approval of Dodge's continued placement in administrative segregation during her first two months there was mainly based up her actions that resulted in her initial placement in administrative segregation.  (*See* Doc. # 126-1 at ¶ 18).

11

While Ms. Dodge was in administrative segregation, she engaged in further improper behavior.  (*See* Doc. # at ¶ 23).  Mark Altholz, Intelligence Supervisor for the DWCF and the Denver Reception and Diagnostic Center ("DRDC"), began investigating further actions by Ms. Dodge, including the use of fraud and threat of economic reprisal against CDOC staff during the performance of their official duties. (*See* Exhibit B, Affidavit of Mark Altholz (Doc. # 126-2) at ¶¶ 2, 3, 7).   During the course of the investigation, Mr. Altholz collected evidence that included letters sent to and from Ms. Dodge and her husband to CDOC staff.  (*Id.* at ¶¶ 8, 12-60; *see also, e.g.,* Doc. # 126-2 at p. 13 of 55).  On or about May 16, 2005, Mr. Altholz obtained a letter written by Ms. Dodge to Defendant Ahlin.  (*Id.* at ¶ 9).  On September 22, 2005, Mr. Altholz obtained a letter sent to Defendant Bokros.  (*Id.* at ¶ 39).  Mr. Altholz' investigation of Ms. Dodge's conduct while she was in administrative segregation resulted in criminal charges against her.  (*Id.* at ¶¶ 62-63).  The District Attorney's Office charged Ms. Dodge with five counts of Attempt to Influence a Public Servant, one count of Conspiracy to Commit Attempt to Influence a Public Servant, two counts of Forgery, and one count of Tampering with Physical Evidence.  (*See* Exhibit C, Complaint and Information, Denver District Court Case No. 06CR1728 (Doc. # 126-3)).  On January 12, 2007, Ms. Dodge pled guilty to the First Count, Attempt to Influence a Public Servant.  (*See* Exhibit D, Criminal Mittimus in Denver District Court Case No. 06CR1728 (Doc. # 126-4)).

Even if Ms. Dodge's retention in administrative segregation for one year implicated due process protections, her continued confinement in administrative custody would not require a remedy because the record shows that she was receiving the required periodic reviews of her status.  *See Shoats v. Horn*, 213 F.3d 140 (3d Cir.

2000) (confinement in solitary confinement of eight years duration was sufficiently atypical and significant in its hardship to create protected liberty interest implicating procedural due process guarantees but inmate received due process via periodic reviews).  Due process requires no more than the regular review procedure that the evidence shows Ms. Dodge received.  *See Rahman X v. Morgan*, 300 F.3d 970, 973-74 (8th Cir. 2002) (reconsideration of housing assignment every 60 days constituted sufficient due process);  *Jones v. Mabry*, 723 F.2d 590, 594 (8th Cir. 1983) (due process requires procedure for periodic review of administrative segregation status); *Hunt v. Sapien*, 480 F. Supp. 2d 1271, 1277 (D. Kan. 2007) (placement was not indefinite where reviewed weekly for the first 60 days, and subsequently reviewed monthly, after 180 days, and annually);  *DiMarco*, 473 F.3d at 1343 (due process satisfied where placement was reviewed every 90 days).  Ms. Dodge has not put forward evidence indicating either that the reviews were not made in a sufficiently timely fashion or that the substance of the reviews was insufficient to meet the minimal requirements of due process.  The evidence indicates no failure to make timely reviews.  To the contrary, the record supports the conclusion that the periodic reviews were timely performed.  Ms. Dodge received reviews every 7 days for the first two months that she was in administrative segregation, until June 30, 2005 (*see* Doc. # 132-4 at pp. 1-6 of 17), and every 30 days thereafter.  (*See id.* at pp. 7-17 of 17).

Nor has Ms. Dodge raised a material question of fact as to the adequacy of the periodic reviews.  Ms. Dodge objects to what she characterizes as "nearly identical" reviews.  (*See* Doc. # 132 at p. 3 of 12 ¶ 15, p. 7 of 12).  *Hewitt* also made clear that a decision to continue an inmate in administrative segregation could be based on the

same facts and considerations that compelled the initial transfer to administrative segregation.  459 U.S. at 477 n. 9.  Ms. Dodge's conduct provided a sufficient basis for her initial placement in administrative segregation.  The reviews took into account the basis for Ms. Dodge's initial placement in administrative segregation.  That the reviews included much of the same information is not a basis for finding a violation of due process here.  The reviews were updated as Ms. Dodge's circumstances changed.  Unless her circumstances warranted a change, Ms. Dodge's status did not change.  The contents of the review forms do not necessarily reflect all factors considered in Ms. Dodge's  reviews.  (*See* Doc. # 126-5 at ¶ 13).

Ms. Dodge does not present any evidence of circumstances or knowledge which the Defendants should have taken into account and did not.  Through the review process, Ms. Dodge was reminded that she "must remain compliant with the rules of the facility."  (*See* Doc. # 132-4 at pp. 5-16 of 17).  Ms. Dodge remained at a Level 2 status until July 30, 2005, when she had progressed to Level 3.  (*See* Doc. # 132-4 at p. 8 of 17).  The reviews indicated positive progress by Ms. Dodge in (*See* Doc. # 132-4 at pp. 8-10 of 17).  Ms. Dodge maintained her Level 3 status until October 2005, when she regressed to Level 2 based on two disciplinary convictions.  (*See* Doc. # 132-4 at p. 11 of 17).  Ms. Dodge was returned to Level 3 in December of 2005 based on the reversal of a disciplinary conviction.  (*See* Doc. # 132-4 at p. 13 of 17).  In January of 2006, Ms. Dodge remained at Level 3 despite the filing of criminal charges against her in Denver County.  (*See* Doc. # 132-4 at pp. 14-15 of 17).  Pursuant to the review process, in March of 2006 Ms. Dodge reached Level 4 and was released from administrative segregation in May of 2006.  (*See* Doc. # 132-4 at pp. 16-17 of 17).  There is no

indication that Ms. Dodge's eventual release from administrative segregation was based on anything other than valid penological considerations. The evidence fails to show that the reviews were insufficient under the requirements of due process.

Ms. Dodge further asserts that Defendants Ahlin and Bokros, who conducted her periodic reviews in administrative segregation, abused their authority in violation of her due process rights by recommending her continued placement in administrative segregation after they were named as alleged victims of criminal charges filed against her in March 2005. (*See* Doc. # 132 at pp. 7-8 of 12). *Cf. Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 592 (Marshall, J., concurring) (stating that "an impartial decisionmaker is a fundamental requirement of due process" that is "fully applicable" to disciplinary hearings for prisoners)); *Abdulhaseeb v. Ward*, 173 Fed. Appx. 658, 662 (10th Cir. 2006) ("Although inmates have a due process right to an impartial decisionmaker in the prison disciplinary context, review of due process challenges based on impartiality is limited to whether such bias prevented the inmate from a meaningful opportunity to be heard and whether discipline was imposed for an improper purpose.") (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1446 (10th Cir. 1996)).

During Mr. Altholz' investigation, between May and September 2005, Defendant Ahlin had numerous conversations with Mr. Altholz. (*See id.* at ¶ 64; *see also* Doc. # 126-5 at ¶ 18). Mr. Altholz asked Defendant Ahlin to provide him copies of letters she received from Ms. Dodge. (Doc. # 126-5 at ¶ 19). While Defendant Ahlin was aware that Mr. Altholz was investigating fraudulent activities by Ms. Dodge, Defendant Ahlin was not aware of the full details of the investigation. (Doc. # 126-5 at ¶ 19; Doc. # 126-

2 at ¶¶ 64-66).  Defendant Ahlin knew sometime in December 2005 that the Denver

District Attorney's office was considering filing criminal charges against Ms. Dodge.

(See Doc. # 126-5 ¶ 24).  However, at the time the criminal charges were filed against

Ms. Dodge, Defendant Ahlin was not aware that the information she provided Mr.

Altholz was any part of the basis for those charges.  (Doc. # 126-5 at ¶ 25).  Defendant

Ahlin learned for the first time in April 2006 that she was a listed "victim" in the criminal

case against Ms. Dodge.  (Id. at ¶ 26). After learning that she was a listed "victim" in the

criminal case against Ms. Dodge, Defendant Ahlin did not make any further

recommendation regarding Ms. Dodge's continued placement in administrative

segregation.  (Id. at ¶ 27).

During Mr. Altholz' investigation, he also obtained letters written by Ms. Dodge to

Defendant Bokros.  (See Doc. # 126-1 at ¶¶ 25-28).  The last time that Defendant

Bokros reviewed Ms. Dodge's placement in administrative segregation was December

14, 2005.  (See Doc. # 126-1 at ¶ 6;  Doc. # 93 at ¶ 45).  The first reference to the

criminal investigation against Ms. Dodge appeared in a periodic review of Ms. Dodge's

administrative segregation placement on January 8, 2006, after Defendant Bokros had

ceased reviewing Ms. Dodge's administrative status.  (See Doc. # 132-4 at p. 14 of 17).

Defendant Bokros learned in February or March of 2006, long after he had ceased

reviewing Ms. Dodge's administrative segregation status, that the letters he forwarded

to Mr. Altholz were used, in part, to substantiate the criminal charges against Ms.

Dodge.  (Doc. # 126-1 at ¶ 28).

In response to this evidence, Ms. Dodge argues that Defendants Ahlin and

Bokros were not impartial decisionmakers because they were "actively involved" in the

16

criminal investigation of her activities.  Ms. Dodge produces scant evidence on this point, consisting merely of corroboration that neither Defendant Ahlin nor Defendant Bokros were aware that  information they provided to Mr. Altholz was related to criminal charges that were filed against Ms. Dodge.  (*See* Doc. # 132-2 at p. 8 of 8;  Doc. # 132-3 at p. 3 of 3).  Ms. Dodge also argues that the forwarding of Ms. Dodge's letters by Defendants Ahlin and Bokros to Mr. Altholz demonstrates their impartiality.  The court disagrees.  The mere forwarding of letters to Mr. Altholz does not demonstrate that Defendants Ahlin and Bokros knew the substance of the criminal allegations, were actively involved in the investigation, or knew that they would later be listed as victims in those allegations.

The court finds Ms. Dodge's evidence insufficient to carry her burden on summary judgment.  "A party opposing summary judgment 'may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in [Rule 56] -- set out specific facts showing a genuine issue for trial.' " *Browne v. San Francisco Sheriff's Dept.*, 616 F. Supp. 2d 975, 986 (N.D. Cal. 2009) (quoting Fed. R. Civ. P. 56(e)(2)).  "Thus, it is the burden of the party opposing summary judgment to make an affirmative showing on all matters placed in issue by the motion as to which it will have the burden of proof at trial."  *Id.*  Ms. Dodge's proffered evidence in opposition to Defendants' summary judgment motion is "insufficiently probative of alleged unconstitutional motive to warrant denial" of Defendants' motion. *See Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988) ("Where the defendant's subjective intent is an element of the plaintiff's claim and the defendant has moved for summary judgment based on a showing of the objective

17

reasonableness of his actions, the plaintiff may avoid summary judgment only by pointing to specific evidence that the official's actions were improperly motivated.").  Ms. Dodge may not "overcome a properly submitted motion for summary judgment based on qualified immunity grounds without more than conclusory and nonspecific allegations." *Id.* at 650.  "If the most that can be hoped for is the discrediting of defendants' denials at trial, no question of material fact is presented." *Modern Home Institute v. Hartford Accident and Indemnity Co.*, 513 F.2d 102, 110 (2d Cir. 1975).  The evidence shows that at the time they were reviewing Ms. Dodge's retention in administrative segregation, neither Defendant Ahlin nor Defendant Bokros knew that they would be named as victims in connection with the criminal charges later brought against her.  The evidence presented by Ms. Dodge fails to demonstrate that a genuine issue of material fact remains as to Defendants Ahlin's and Bokros' impartiality as decisionmakers and fails even to discredit Defendants' evidence.

Finally, as to the fourth enumerated factor, Ms. Dodge has not alleged or demonstrated that her temporary placement in administrative segregation in any way increased the length of her sentence.  *See DiMarco*, 473 F.3d at 1342.

In sum, all of the relevant factors set forth by the Tenth Circuit weigh against an enforceable liberty interest as a prerequisite to Ms. Dodge's due process claim.

2.      Claim for Retaliation in Violation of First Amendment Rights

The court has previously construed Ms. Dodge's Claim Three as including a claim for First Amendment retaliation against Defendants Bokros and Ahlin.  (*See* Doc. # 118 at p. 22-24 of 36).  "[G]overnment action which chills constitutionally protected

18

speech or expression contravenes the First Amendment." *Wolford v. Lasater*, 78 F.3d 484, 488 (10th Cir. 1996).  Prison "officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted).  However, "an inmate is not inoculated from the normal conditions of confinement . . . merely because he has engaged in protected activity." *Id.*, 149 F.3d at 1144.

To establish a First Amendment retaliation claim, a prisoner must demonstrate that: (1) she engaged in protected activity; (2) she suffered an adverse action; and (3) a causal connection exists between the protected conduct and the adverse action. *Escobar v. Reid*, 668 F. Supp 2d 1260, 1275-76 (D. Colo. 2009) (citing *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)).  "A prisoner claiming retaliation for exercising First Amendment rights must show that a retaliatory motive was the but-for cause of the challenged adverse action."  *Strope v. Cummings*, 382 Fed. Appx. 705, 710, 2010 WL 2294524 (10th Cir. June 9, 2010) (citing *Peterson*, 149 F.3d at 1144 ("[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." (internal quotation marks and citation omitted).  The inmate must make this showing by pleading specific facts demonstrating the causal connection. *Peterson*, 149 F.3d at 1144.  "[I]t is imperative that [a] plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice; plaintiffs must, rather, allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).

Ms. Dodge argues that "[i]n this case, a jury could reasonably find that a motivating factor behind Defendants' sham reviews of Ms. Dodge's administrative segregation placement was in retaliation for the circumstances leading up to the subsequent criminal charges filed against her."  (Doc. # 132 at p. 9 of 12).  First, the court assumes without deciding that "the circumstances leading up to the subsequent criminal charges filed against" Ms. Dodge may have been related to some exercise of her First Amendment rights.[3]  Second, "the Tenth Circuit implicitly found" that an inmate's placement in segregation for several months was an adverse action.  *Montoya v. Board of County Commissioners*, 506 F. Supp. 2d 434, 448 (D. Colo. 2007) (citing *Smith v. Maschner*, 899 F.2d 940, 945-48 (10th Cir. 1990)).  *See also Smith v. Yarrow*, 78 Fed. Appx. 529, 540 (6th Cir. 2003) (" '[i]n the prison context, an action comparable to transfer to administrative segregation would certainly be adverse' ") (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir.1999)).

Third and finally, the court must determine whether Defendants' action was substantially motivated by Ms. Dodge's constitutionally protected conduct.  The Tenth Circuit "has set forth a test for examining the issue of intent in the context of a summary judgment motion based on qualified immunity."  *McCook v. Spriner School Dist.*, 44 Fed.Appx. 896, 904 (10th Cir. 2002).  "First, Defendants must make a prima facie showing of the objective reasonableness of the challenged conduct."  *Id.* (internal

---

[3]     Ms. Dodge has not specifically alleged or demonstrated what First Amendment right was violated by "the circumstances leading up to the subsequent criminal charges filed against her."  She has not refuted that she was initially placed in administrative segregation based on conspiring with her husband through a telephone call to bring contraband into the DWCF.

quotations and citations omitted).  If Defendants meet this burden, Ms. Dodge must then present evidence that "Defendants acted on the basis of a culpable subjective state of mind."  *Id.* at 905-06 (internal quotations omitted).

Here, Defendants have met their prima facie burden by presenting evidence of reasons for Ms. Dodge's continued placement in administrative segregation.  Ms. Dodge has not produced evidence that but for retaliatory motives related to her exercise of her First Amendment rights, Defendants Ahlin and Bokros would not have recommended or decided to continue her placement in administrative segregation.  The evidence before the court does not demonstrate that Defendants Ahlin and Bokros knew the substance of the criminal allegations against Ms. Dodge, were actively involved in the criminal investigation, or knew that they would later be listed as victims in criminal charges brought against her.  (*See, e.g.*, pp. 15-19 of this Memorandum Opinion and Order, above).  There is no evidence that Defendants Ahlin or Bokros had specific knowledge about "the circumstances leading up to the subsequent criminal charges" or that they based their recommendations or decisions to keep Ms. Dodge in administrative segregation on her exercise of a First Amendment right. The evidence simply does not demonstrate a causal connection between "the circumstances leading up to the subsequent criminal charges filed against" Ms. Dodge and the Defendants' recommendations or decisions to keep Ms. Dodge in administrative segregation.  As Ms. Dodge has not established a triable issue on the element of causation, summary judgment is properly granted in favor of Defendants on her retaliation claim.

3.     Qualified Immunity

As Ms. Dodge is suing Defendants in their individual capacities, Defendants raise

the defense of qualified immunity.  As the court has concluded that Ms. Dodge fails to

satisfy one part of her two-part burden – that Defendants Ahlin and Bokros violated a

constitutional right –  Defendants Ahlin and Bokros are thus entitled to qualified

immunity in their individual capacities and entitled to summary judgment on the two

remaining claims for relief in the SAVC.  *See Wilder*, 490 F. 3d at 815 (instructing

district court on remand to enter judgment in favor of defendant on basis of qualified

immunity, where plaintiff failed to carry his burden to show violation of a constitutional

right);  *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) ("if the plaintiff fails to

carry either part of his two-part [qualified immunity] burden, the defendant is entitled to

qualified immunity.") (citation omitted).

4.     Punitive Damages

Defendants further move for summary judgment on Ms. Dodge's claim for

punitive damages. While punitive damages are available in § 1983 actions, they "are to

be awarded only when 'the defendant's conduct is shown to be motivated by evil motive

or intent, or when it involves reckless or callous indifference to the federally protected

rights of others.' " *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (quoting *Smith

v. Wade*, 461 U.S. 30, 56 (1983)). "Punitive damages become a discretionary matter for

the jury in a section 1983 action only if the plaintiff makes an adequate threshold

showing." *Iacobucci v. Boulter*, 193 F.3d 14, 26-27 (1st Cir. 1999).  That threshold

showing "requires proof that the defendant acted 'in the face of a perceived risk that

22

[his] actions [would] violate federal law.' " *Iacobucci*, 193 F.3d at 26 (quoting *Kolstad v. American Dental Ass.*, 527 U.S. 526, 536 (1999)).

Ms. Dodge has not demonstrated any basis for an award of punitive damages. The lack of any allegations or evidence as to Defendants' evil motives or intent results in failure to demonstrate a genuine issue of material fact on Ms. Dodge's claim for punitive damages.  Further, Ms. Dodge's claim for punitive damages depends upon her underlying due process and First Amendment retaliation claims, on which the court hereby grants summary judgment in favor of Defendants based on Ms. Dodge's failure to present any genuine issue of material fact.

Accordingly, IT IS ORDERED that:

1.      Defendants' Motion for Summary Judgment (filed October 18, 2010) (Doc. # 126) is GRANTED.

2.      Summary judgment shall enter on the Second Amended Verified Complaint (Doc. # 93) in favor of Defendants and against Plaintiff, with each party to pay his, her, or its own attorney fees and costs.

3.      Defendants' Motion in Limine (filed November 22, 2010) (Doc. # 133) is DENIED as moot.

DATED at Denver, Colorado, this 1st day of March, 2011.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge